**FILED**
**CLERK**

1/18/2023 4:57 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
DERMSOURCE, INC.,

                    Plaintiff,

        -against-

CITYMEDRX, LLC; ROBERT ABAEV; and
DAVID ABAEV,

                    Defendants.
---------------------------------X
```

**ORDER TO SHOW CAUSE**
**WITH TEMPORARY**
**RESTRAINING ORDER**
23-CV-281(JS)(JMW)

```
APPEARANCES
For Plaintiff:      Emanuel Kataev, Esq.
                    Milman Labuda Law Group PLLP
                    3000 Marcus Avenue, Suite 3W8
                    Lake Success, New York  11530


For Defendants:     No appearances.
```

SEYBERT, District Judge:

Before the Court is an injunction motion[1] by DermSource, Inc. ("Plaintiff" or "DermSource") for, <u>inter alia</u>, the <u>ex parte</u> issuance of a temporary restraining order ("TRO") and an order of surrender due to the alleged misappropriation of trade secrets and confidential and proprietary information by Defendants CityMedRX, LLC ("CityMed"), Robert Abaev ("Robert"), and David Abaev ("David"; collectively, "Defendants"). (TRO Motion, ECF No. 4; Support Memo, ECF No. 5.) Based on Plaintiff's Complaint (ECF No.

---

[1] Plaintiff's injunction motion seeks both a temporary restraining order ("TRO") and a preliminary injunction. This Order address only that portion of the injunction motion seeking the TRO; therefor, herein, the injunction motion is referred to as the TRO Motion.

1

1), TRO Motion, Support Memo, the Supporting Declaration of Yuriy Davydov (ECF No. 7) and accompanying exhibits (ECF Nos. 7-1 through 7-16), as well as the Supporting Declaration of Emanuel Kataev, Plaintiff's Counsel, the Court finds that Plaintiff has met its burden of establishing its entitlement to a TRO as described herein; however, at this juncture, Plaintiff has not established entitlement to an order of surrender. Accordingly, Plaintiff's TRO Motion (ECF No. 4) is GRANTED IN PART and DENIED IN PART.

<u>BACKGROUND</u>

Plaintiff, a New York corporation, is a Group Purchasing Organization ("GPO") representing more than eight hundred (800) independent retail pharmacies. (Compl. ¶¶ 19, 20; Davydov Decl., ¶ 10.) Defendant CityMed is a New York limited liability company that is "a pharmaceutical wholesaler which has had a vendor relationship with DermSource since DermSource's inception" in 2017. (Compl. ¶¶ 8, 16.) As a GPO, DermSource obtains independent retail pharmacies as its customers and utilizes wholesalers to fulfill the needs of those independent retail pharmacies. (Compl. ¶¶ 21, 31.)

Robert and David are New York residents, as well as principals and/or members of CityMed. (Compl. ¶ 9.) Citymed is a pharmaceutical wholesaler. (Compl. ¶ 21.) "In or about January 2021, . . . DermSource and CityMed entered into an exclusive agreement under which DermSource utilized CityMed to fulfill all

orders sourced by DermSource" (hereafter, the "January 2021 Agreement"). (Compl. ¶ 34.) By its terms, the January 2021 Agreement expired on December 31, 2022. (Compl. ¶ 40.)

DermSource alleges that the January 2021 Agreement "was premised on a business concept of consolidating DermSource's and CityMed's collective services in order to present a first-to-market duo that, together, as a pharmaceutical wholesaler and dermatology-specialized-GPO, would be marketed and sold as a single enterprise." (Compl. ¶ 37.) In that regard, DermSource and CityMed marketed themselves to a pharmaceutical conglomerate for approximately $24 million for their combined business, but that transaction was not consummated. (Compl. ¶ 38.) Nonetheless, DermSource contends "the foregoing anticipated sale was achieved in large part due to the parties' agreement to work exclusively with each other . . . ." (Compl. ¶ 39.) Thus, as the January 2021 Agreement neared expiration, but hoping to find another buyer, in December 2022, the parties met to negotiate a new agreement that, DermSource alleges, was undertaken "with the understanding that . . . the parties would continue to work together, in good faith, as they [had] for several years." (Compl. ¶¶ 40-41.) However, negotiations did not proceed as DermSource had anticipated; rather, CityMed sought significant changes to their prior, January 2021 Agreement. (Compl. ¶¶ 42-49; Davydov Decl. ¶ 50.)

As negotiations were falling apart between DermSource and CityMed, on December 20, 2022, DermSource's key employee (see Davydov Decl. ¶¶ 20-21, 26, 53), Bahrum Siddiqui (hereafter, the "Key Employee"), who was its Chief Operating Officer, gave his two-week notice of resignation. (Compl. ¶¶ 24-25; Davydov Decl. ¶ 52.) As part of his resignation notice, the Key Employee stated his intention to cooperate with DermSource regarding the transfer of his responsibilities. (Davydov Decl. ¶ 53.) Despite this representation, the Key Employee did not provide significant information about DermSource customers sourced by and through his employment with DermSource by failing to enter that information into DermSource's customer relationship management ("CRM") sales system, which documents all communication and documentation with its customers. (Davydov Decl. ¶¶ 54, 58.) For example, the Key Employee did not enter the following confidential information: each customer's personal cell phone number, unlisted telephone number, email address, and other information not readily available to the public such as purchasing habits and customer preferences. (Davydov Decl. ¶¶ 55-57.) DermSouce alleges:

> DermSource's business model, customer lists, contact information and preferences, information related to [its] revenues and profit margins, the related information Plaintiff's [K]ey [E]mployee obtained during his employment with DermSource are confidential and proprietary, and took great costs and efforts to create, including years of developing relationships with customers.

(Compl. ¶ 58.)  DermSource contends it took reasonable measures to keep its confidential information secret, including: "restricting access of this information only to [the Key Employee] and requiring him to enter this information into a secure CRM program protected by firewalls and related resources;" ensuring its office is secure, which is under video surveillance and has a keyboard office entry; providing the Key Employee with his own, private office and password-protected computer; and maintaining an office computer network that is firewall-protected.  (Id. ¶¶ 72-73.)

Moreover, despite his initial commitment to cooperate with DermSource, "on December 28, 2022, . . . [the Key Employee] stated that he felt 'uncomfortable' providing DermSource with its customer information," abruptly leaving; thereafter, he ceased communicating with DermSource.  (Compl. ¶ ¶55; Davydov Decl. ¶¶ 59-60.)  Additionally, CityMed stopped filling orders before the expiration of the January 2021 Agreement.  (Id.; Davydov Decl. ¶¶ 60-61.)

DermSource learned that the Key Employee went to work for CityMed.  (Compl. ¶¶ 56-57.)  It further alleges that, after the Key Employee's departure, "DermSource discovered that its camera system, which records audio and video, had been hacked into by [the] [K]ey [E]mployee at the behest of the Defendants to illegally record and intercept DermSource's internal

communications." (Compl. ¶ 62; Davydov Decl. ¶¶ 77-80.) Plaintiff contends that the Key Employee illegally accessed DermSource's camera system: while still employed at DermSource; even after his resignation, to wit, until January 2, 2021; and for the benefit of CityMed and detriment of DermSource. (Davydov Decl. ¶¶ 81-82; Compl. ¶¶ 76-78.) It alleges that "[a] significant number of Plaintiff's customers have been solicited directly by Defendants using Plaintiff's trade secrets and confidential information." (Compl. ¶ 84.)

Based on the foregoing allegations, on January 16, 2023, DermSource filed its Complaint asserting federal claims under: (1) the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 ("DTSA"); (2) the Wiretap Act, 18 U.S.C. § 2520; (3) the Computer Fraud & Abuse Act ("CFAA"), 18 U.S.C. § 1030; it also brings New York State law claims for (4) misappropriation of trade secrets; (5) unfair competition; (6) tortious interference with contractual relations, business relations, and prospective economic advantage; (7) unjust enrichment; (8) breach of contract; (9) conversion; (10) civil conspiracy; and (11) breach of implied covenant of good faith and fair dealing. The instant ex parte TRO Motion accompanied Plaintiff's Complaint.

TEMPORARY RESTRAINING ORDER

I.   Applicable Law

          In this Circuit the standard for issuing a TRO and a
preliminary injunction are the same, although a TRO is often
granted ex parte and has, at most, a limited 14-day lifespan.
Omnistone Corp. v. Cuomo, 485 F. Supp. 3d 365, 367 (E.D.N.Y. 2020);
see also Pan Am. World Airways, Inc. v. Flight Engineers' Int'l
Ass'n, PAA Chapter, AFL-CIO, 306 F.2d 840, 842 (2d Cir. 1962) ("The
purpose of a temporary restraining order is to preserve an existing
situation in status quo until the court has an opportunity to pass
upon the merits of the demand for a preliminary injunction."). "A
plaintiff seeking a preliminary injunction must establish [1] that
he is likely to succeed on the merits, [2] that he is likely to
suffer irreparable harm in the absence of preliminary relief, [3]
that the balance of equities tips in his favor, and [4] that an
injunction is in the public interest." Winter v. Nat'l Res. Def.
Council, Inc., 555 U.S. 7, 20 (2008); Louis Vuitton Malletier v.
Dooney & Bourke, Inc., 454 F.3d 108, 114 (2d Cir. 2006).

II.   Application

          Plaintiff seeks a TRO enjoining Defendants from: (1)
"using in any manner whatsoever DermSource's trade secrets and
confidential and propriety information"; (2) having any contact
with any of DermSource's employees; (3) contacting or serving any
DermSource's customers or clients; and (4) operating their

business until such time that they return DermSource's trade secrets and confidential information. (<u>See</u> TRO Motion at 3-4.)

Having reviewed the Complaint, TRO Motion, Support Memo, Yuriy Davydov's Supporting Declaration and accompanying exhibits, as well as Attorney Kataev's Supporting Declaration, the Court finds:

1) At this stage, venue is proper in this District and Plaintiff has established a sufficient basis for the Court to exercise personal jurisdiction over Defendants;

2) Plaintiff has shown a likelihood of success on its claims against Defendants on its federal claims;[2]

3) Plaintiff will suffer immediate irreparable harm unless Defendants are enjoined. <u>See</u> <u>N. Atl. Instruments, Inc. v. Haber</u>, 188 F.3d 38, 49 (2d Cir. 1999) (holding "loss of trade secrets cannot be measured in money damages" because "[a] trade secret once lost is, of course, lost

---

[2] The Court focuses upon Plaintiff's federal claims herein; because it finds that Plaintiff is entitled to injunctive relief on those claims, the Court need not reach Plaintiff's remaining state law claims, as "[t]he scope of appropriate injunctive relief would not vary based on the merits of [those] remaining . . . claims." <u>Am. Auto. Ass'n, Inc. v. Limage</u>, No. 15-CV-7386, 2016 WL 4508337, at *2 (E.D.N.Y. Aug. 26, 2016) (citing <u>Pretty Girl, Inc. v. Pretty Girl Fashions, Inc.</u>, 778 F. Supp. 2d 261, 269 (E.D.N.Y. 2011) (finding for the plaintiff on a Lanham Act claim, and declining to reach additional claims because the "scope of the [injunctive] relief sought at this stage . . . is identical regardless of whether the Plaintiff would be likely to succeed on any of its additional claims")).

forever." (quoting *FMC Corp. v. Taiwan Tainan Giant Indus. Co.*, 730 F.2d 61, 63 (2d Cir. 1984)));

4) Defendants, or others acting in concert with Defendants, would likely destroy, move, hide or otherwise make assets inaccessible to the Court if Plaintiff proceeded on notice to Defendants, thus frustrating the ultimate relief that Plaintiff seeks. See FED. R. CIV. P. 65(b);

5) The balance of the parties' prospective harms, the equities, and the interests of justice and the public support granting such relief, because the harm to Plaintiff from the denial of the requested ex parte order outweighs the harm to Defendants' interests against granting such an order;

6) The TRO will not harm the public interest; and

7) Pursuant to Rule 65(c), Plaintiff is directed to post security with the Clerk of Court in the amount of $10,000.00, as further detailed, infra.

Accordingly, for the foregoing reasons, Plaintiff's motion for a TRO is GRANTED as described infra.

### *EX PARTE* SURRENDER ORDER

Second, Plaintiff seeks an order directing Defendants: (1) return all of DermSources trade secrets and confidential and proprietary information, without limitations and in whatever formats Defendants have them; as well as (2) make all electronic

accounts in Defendants' custody or control and on which they stored information regarding DermSource's trade secrets and confidential and proprietary information available and accessible to Plaintiff – including providing relevant passwords – for inspection to ensure said secrets and information are secure and have not been improperly copied or distributed. (See TRO Motion at 3-4.) Thus, in addition to arguing its entitlement to a TRO because it has shown irreparable harm, a likelihood of success on the merits of its claims, that granting the TRO is in the public interest, and equities of granting the TRO tip in DermSource's favor, Plaintiff summarily asserts its entitlement to an order of surrender pursuant to the DTSA, the Wiretap Act, and the CFAA (see Support Memo at 8; see also id. at 9 (re: Wiretap Act).)

In that regard, in a conclusory manner, DermSource contends "the Court should grant a TRO . . . to prevent Defendants from continuing to possess and cause further damage to DermSource as a result of their unauthorized possession of DermSource's [confidential and proprietary information], and its theft of DermSource's customers and employees." (Id.) Similarly, Plaintiff argues "[i]njunctive relief is also warranted under the Wiretap Act to . . . prevent [the] use and require the surrender of Defendants' electronic devices . . . ." (Id. at 9 (emphasis added) (citing 18 U.S.C. § 2520(b)).) Moreover, other than naming

10

the CFAA, Plaintiff does not advance any argument relying upon that statute.  (See id. at 8-9.)

I.   Applicable Law

    A.   The DTSA

The DTSA permits a court to, in "extraordinary circumstances, issue an order providing for the seizure of property necessary to prevent the propagation or dissemination of the trade secret that is the subject of the action."  18 U.S.C. § 1836(b)(2)(A)(i).  Prior to issuing an ex parte seizure order, the Court must find "that it clearly appears from specific facts" that:

1)    an order issued pursuant to Rule 65 of the Federal Rules of Civil Procedure or another form of equitable relief would be inadequate because the party to which the order would be issued would evade, avoid, or otherwise not comply with such an order;

2)    an immediate and irreparable injury will occur if such seizure is not ordered;

3)    the harm to the applicant of denying the application outweighs the harm to the legitimate interests of the person against whom seizure would be ordered of granting the application and substantially outweighs the harm to any third parties who may be harmed by such seizure;

4)    the applicant is likely to succeed in showing that the information at issue is a trade secret and the defendant

misappropriated the trade secret by inappropriate means or conspired to do so;

5)   the person against whom seizure would be ordered has actual possession of the trade secret, and any property to be seized;

6)   the application describes with reasonable particularity the matter to be seized and, to the extent reasonable under the circumstances, the location where the matter is to be seized;

7)   if the applicant were to provide notice, the person against whom seizure would be ordered would destroy, move, hide, or otherwise make such matter inaccessible to the court; and

8)   the applicant has not publicized the requested seizure.

18 U.S.C. § 1836(b)(2)(A)(ii); see also Vice Cap., LLC v. CBD World, LLC, No. 18-CV-0566, 2018 WL 8786293, at *2 (W.D. Okla. June 20, 2018); Solar Connect, LLC v. Endicott, No. 17-CV-1235, 2018 WL 2386066, at *1 (D. Utah Apr. 6, 2018); The Ruby Slipper Café, LLC v. Belou, No. 18-1548, slip op. (E.D. La. Sept. 30, 2019).

Further, if the Court issues a seizure order it must (1) set forth findings of fact and conclusions of law; (2) provide for the narrowest seizure of property necessary and direct that the seizure be conducted in a manner that minimizes any legitimate

business operations; (3) be accompanied by an order prohibiting access by the applicant or the defendant, and prohibiting any copies of the seized property; (4) provide that if access is granted by the court to the applicant or the defendant, such access shall be consistent with 18 U.S.C. § 1836(D); (5) provide guidance to the law enforcement officials executing the seizure that clearly delineates the scope of the authority of the officials; (6) set a date for a hearing at the earliest possible time, but that is not later than seven days after the order has issued; and (7) require the person obtaining the order to provide a security determined by the court for the payment of any damages as a result of a wrongful or excessive seizure. See 18 U.S.C. § 1836(b)(2)(B); Vice Cap., LLC, 2018 WL 8786293, at *2 (summarizing elements of seizure order).

     B.   The Wiretap Act

Pursuant to Section 2520 of Title 18 of the United States Code, in certain instances one is entitled to recover civil damages for illegal wiretapping, i.e.:

> [A]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engages in that violation such relief as may be appropriate.

18 U.S.C. § 2520(a). Among other appropriate relief authorized by Section 2520 of the Wiretap Act is "such preliminary and other

equitable or declaratory relief as may be appropriate." 18 U.S.C. § 2520(b)(1).

II.  Application

        Upon the record presented, the Court is unable to find that Plaintiff has met its burden to show that extraordinary circumstances warrant issuance of an ex parte seizure order pursuant to the DTSA.  Indeed, Plaintiff has not presented any meaningful argument that the Court-issued TRO is inadequate to prevent Defendants from disseminating trade secrets and/or confidential and proprietary information.  At best, Plaintiff's argument in support of an order directing the surrender of Defendants' electronic devises is conclusory.  Even if the Court were to interpret DermSource's surrender request as an argument that Defendants may ignore the TRO order, that does not constitute a clear showing from specific facts necessary to demonstrate that Rule 65's protections are inadequate.  See, e.g., ARB Labs Inc. v. Woodard, No. 19-CV-0116, 2019 WL 332404, at *3-4 (D. Nev. Jan. 25, 2019) ("Though these facts raise the possibility that Woodard would ignore an order under Rule 65, it doesn't clearly appear from them that he 'would.'  As I am not persuaded that an order under FRCP 65 would be 'inadequate,' I deny plaintiffs' motion for a civil seizure order.").  Rather, upon the record presented, there is an absence of specific facts warranting the issuance of a seizure order, which is primarily reserved for extraordinary circumstances

in which Rule 65's protections have failed.  Cf. Solar Connect,
2018 WL 2386066, at *2 (finding equitable and injunctive relief
inadequate based upon defendants' "high level of computer and
technical proficiency," past attempts to delete data and
information from computers, "willingness to provide false and
misleading information," and "willingness to hide information and
move computer files rather than comply with requests to cease use
of plaintiff's proprietary materials"); The Ruby Slipper Café,
LLC, No. 18-1548, slip op. at  3 (issuing ex parte seizure order
where defendants disregarded the Court's Rule 65 Orders and
destroyed or hid relevant evidence); Vice Cap., LLC, 2018 WL
8786293, at *2-3 (same, where defendants improperly retained
plaintiffs' customer list and showed "a willingness to provide
false and misleading information to said customers," including
that plaintiffs' products "were tainted" and would make customers
sick); AVX Corp. v. Kim, No. 17-CV-0624, 2017 WL 11316598, at *2
(D.S.C. Mar. 13, 2017) (same, where defendant demonstrated his
likelihood to evade, avoid, or otherwise not comply with a Rule 65
order by "his deceptive actions when he repeatedly lied and
attempted to conceal the fact that he surreptitiously accessed and
downloaded the Stolen Computer files").  For substantially the
same reasons, issuing the requested surrender order within the

context of the Court's TRO order and pursuant to the Wiretap Act is not warranted.[3]

Hence, at this juncture, the Court declines to issue the requested ex parte surrender order. However, in the event Plaintiff becomes aware of additional facts to support issuance of such an order, Plaintiff is permitted to renew its request. Accordingly, Plaintiff's motion for a seizure order is DENIED without prejudice.

<u>CONCLUSION</u>

Accordingly, based on the foregoing, **IT IS HEREBY ORDERED** that the branch of the Plaintiff's ex parte injunction motion seeking a TRO (ECF No. 4) is **GRANTED**, as stated herein;

**IT IS FURTHER ORDERED** that Defendants are to show cause at an **IN-PERSON HEARING before this Court in Courtroom 1030 of the**

---

[3] Nevertheless and to be clear, Defendants are under a duty to preserve evidence. Indeed, "anyone who anticipates being a party or is a party to a lawsuit must not destroy unique, relevant evidence that might be useful to an adversary." Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 217 (S.D.N.Y. 2003) (citing Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 72 (S.D.N.Y. 1991)). "While a litigant is under no duty to keep or retain every document in its possession . . . it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." Id. Here, Plaintiff has pled claims regarding, inter alia, improper misappropriation of its trade secrets and confidential and proprietary information (see Compl); thus, Defendants have an affirmative obligation to ensure that any relevant evidence is not destroyed, independent of a TRO order.

16

**Central Islip Federal Courthouse located at 100 Federal Plaza in Central Islip, New York, on <u>Monday, January 30, 2023, at 9:30 a.m.</u>**, or as soon thereafter as counsel may be heard, why an order should not be issued pursuant to Rule 65 of the Federal Rules of Civil Procedure:

1) Preliminarily enjoining Defendants from:

   (a) using in any manner whatsoever DermSource's trade secrets and confidential and proprietary information including, without limitation, DermSource's customer database, including the identity and contact information of DermSource's customers, or any other information regarding DermSource's customers, clients, transactions, financial information, pricing information, or other matters involving DermSource;

   (b) directly or indirectly having any contact with any of Plaintiff's current and/or former employees;

   (c) continuing to serve DermSource's customers until such time that DermSource recovers its trade secrets and confidential and proprietary information from Defendants;

   (d) operating their business until such time that they return DermSource's trade secrets and confidential and proprietary information;

(e) directly or indirectly further violate the Defend Trade Secrets Act, the Wiretap Act, and/or the Computer Fraud & Abuse Act, including the use of DermSource's trade secrets and confidential and proprietary information, the use of any device to intercept oral communications made by principals of Plaintiff, and the use of any device to hack into Plaintiff's computer systems, and unfairly competing with Plaintiff in any manner; and

2) Directing Defendants:

(a) return to DermSource all originals and copies of documents, records, and information, whether in hard copy and/or computerized and/or other electronic media form, that contain DermSource's trade secrets and confidential and proprietary information including, without limitation, DermSource's customer database, including the identity and contact information of DermSource's customers, and for each customer of DermSource, the services offered and payments received from DermSource's customers, and/or other matters involving DermSource and which Defendants obtained or accessed, including, without limitation, information regarding DermSource's customers,

18

clients, transactions, financial information, pricing information, or other sensitive information involving DermSource; and

(b) make all electronic accounts that are in their custody or control and on which they stored information regarding DermSource's trade secrets and confidential and proprietary information available and accessible to DermSource (including providing relevant passwords) to inspect to ensure DermSource's trade secrets and confidential and proprietary information is secure and has not been improperly copied or distributed.

(See Proposed Order to Show Cause, ECF No. 4, at 1-3.)

**IT IS FURTHER ORDERED** that, sufficient reason having been shown, pending the hearing of Plaintiff's injunction motion seeking a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure:

1) Defendants are hereby **TEMPORARILY RESTRAINED AND ENJOINED** from:

(a) **USING IN ANY MANNER WHATSOEVER** DermSource's trade secrets and confidential and proprietary information including, without limitation, DermSource's customer database, including the identity and contact information of DermSource's

customers, or any other information regarding DermSource's customers, clients, transactions, financial information, pricing information, or other matters involving DermSource;

(b) directly or indirectly having any contact with any of Plaintiff's current and/or former employees;

(c) continuing to serve DermSource's customers until such time that DermSource recovers its trade secrets and confidential and proprietary information from Defendants;

(d) contacting any of DermSource's clients or customers and/or individuals currently performing services for DermSource;

(e) directly or indirectly further violating the Defend Trade Secrets Act, the Wiretap Act, and/or the Computer Fraud & Abuse Act, including the use of DermSource's trade secrets and confidential and proprietary information, the use of any device to intercept oral communications made by principals of Plaintiff, and the use of any device to hack into Plaintiff's computer systems, and unfairly competing with Plaintiff in any manner; and

2) Defendants are **DIRECTED TO MAINTAIN AND PRESERVE** all originals and copies of documents, records, and

information that contain DermSource's trade secrets and confidential and proprietary information -- regardless of the fashion or manner in which they are held, possessed or stored -- including, without limitation, DermSource's customer database, including the identity and contact information of DermSource's customers, and for each customer of DermSource, the services offered and payments received from DermSource's customers, and/or other matters involving DermSource and which Defendants obtained or accessed, including, without limitation, information regarding DermSource's customers, clients, transactions, financial information, pricing information, or other sensitive information involving DermSource.

**IT IS FURTHER ORDERED** that this Temporary Restraining Order will expire fourteen (14) days from its entry in accordance with Federal Rule of Civil Procedure 65(b)(2) unless, for good cause shown, this Order is extended or Defendants consent to an extension.

**IT IS FURTHER ORDERED** that, pursuant to Federal Rule of Civil Procedure 65(c), Plaintiff is required to give security in the amount of $10,000 (in the form of a bond, cashier's check or certified bank check) by no later than Friday, January 20, 2022; said security it to be submitted to the Clerk of Court. (**Note:**

The Clerk's Office in the Central Islip Federal Courthouse is opened from 10:00 a.m. to **3:00 p.m.**)

**IT IS FURTHER ORDERED** that Plaintiff shall serve Defendants with a copy of this Order, together will all of the papers and materials that Plaintiff filed with the Court, by no later than 5:00 p.m. on Thursday, January 19, 2023. Service shall be made upon Defendants via email to their counsel, Gary M. Kushner and Howard M. Rubin, Esqs., of Geotz Fitzpatrick, LLP, via email[4] to gkushner@goetzfitz.com and hrubin@goetzfitz.com, and such service shall be deemed good and sufficient.

**IT IS FURTHER ORDERED** that Plaintiff shall file proof of service of this Order and its TRO submissions to the docket by no later than Friday, January 20, 2023;

**IT IS FURTHER ORDERED** that responsive papers, if any, must be filed and served to Plaintiff's attorney, via email to emanuel@mllaborlaw.com, by no later than 5:00 p.m. on Tuesday, January 24, 2023, and reply papers, if any, must be filed and served upon Defendants, via the emails designated above, by no later than 12:00 noon on Wednesday, January 26, 2023. **Defendants are ON NOTICE**: Failure to timely serve and file answering papers, or the failure to appear at the hearing, may result in the

---

[4] Plaintiff represents that Defendants' attorneys have agreed to accept service on behalf of Defendants. (See TRO Motion at 5.)

imposition of a preliminary injunction against them pursuant to Federal Rule of Civil Procedure 65.

**IT IS FURTHER ORDERED** that, <u>by no later than 12:00 noon on Friday, January 27, 2023</u>, the parties shall file a joint letter advising the Court whether they intend to call witnesses at the show cause hearing on Plaintiff's motion for a preliminary injunction, and, if so, provide the names of said witnesses.

**IT IS FURTHER ORDERED** that Plaintiff's request for issuance of an <u>ex parte</u> surrender order is **DENIED without prejudice to renew** consistent with this Order.

**SO ORDERED.**

/s/  JOANNA SEYBERT
Joanna Seybert, U.S.D.J.


Dated: January 18, 2023
       Central Islip, New York


Time:  **4:50 p.m.**